IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEBORAH L. AKERS            )
                            )
   v.                       )   NO. 3:20-01107
                            )
SHARON D. MAERKLE, et al.   )

**TO: Honorable Aleta A. Trauger, District Judge**

# R E P O R T   A N D   R E C O M E N D A T I O N

This case has been referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of Court. *See* Order entered April 1, 2021 (Docket Entry No. 32).

Presently pending before the Court are the motion to dismiss filed by Defendants Judson L. Pankey, Matthew K. Menger, Jori L. O'Neal, Bruce S. Nozick, and Michael D. Foote (Docket Entry No. 46) and the motion to dismiss filed by Defendant Sharon Maerkle (Docket Entry No. 55). The motions are opposed by Plaintiff. For the reasons set out below, the undersigned respectfully recommends that the motions be granted and that this action be dismissed.

## I. BACKGROUND

Deborah L. Akers ("Plaintiff") is a resident of Nashville, Tennessee. She filed this *pro se* and *in forma pauperis* lawsuit on December 28, 2020, against nine out-of-state individuals based upon allegations of wrongdoing by them related to a second mortgage that was in place on Plaintiff's residence, located at 543 Richmar Drive, Nashville, Tennessee ("the Property").

Plaintiff seeks not less than $250,000.00 in damages, as well as injunctive relief. *See* Third Amended Complaint ("TAC") (Docket Entry No. 27) at ¶¶ 4 and 20(v). By Order entered January 6, 2021 (Docket Entry No 5), the Court denied the request by Plaintiff in her first amended pleading for emergency and preliminary injunctive relief to prevent a foreclosure sale of the Property. Plaintiff thereafter amended her complaint twice, and her third amendment is the operative pleading. *See* Order entered March 5, 2021 (Docket Entry No. 26).

In 2003, Plaintiff executed a promissory note ("Note") to obtain a loan for $37,200.00 from First Franklin Financial Corp. ("First Franklin") and pledged the Property as security for the loan through a deed of trust ("DOT") signed by herself and her spouse, James Akers. TAC at ¶ 8; Note (Docket Entry 47-2); DOT (Docket Entry No. 47-1). In 2009, the Note was assigned and Dyck-O'Neal, Inc., ("DONI") became the holder of the Note. TAC at ¶ 8. Likewise, the DOT was assigned by First Franklin to Radian Services, LLC ("Radian") and thereafter by Radian to DONI. TAC at ¶¶ 11-13, 17, and 18; Assignments of DOT (Docket Entry No. 21-1 at 48-49 and 52-55. Plaintiff ceased making loan payments on the Note in December 2008, *see* TAC at ¶ 9, and although she unsuccessfully attempted during the next several years to settle the matter with DONI, *id* at ¶¶ 15-16, DONI initiated a non-judicial foreclosure on the Property. *Id*. at ¶¶ 19-20. Prior to the sale being conducted, however, Plaintiff or her husband paid $77,317.52[1] as the payoff amount demanded by DONI and a foreclosure sale did not occur. *Id*. at ¶ 20(iv); *see also* Docket Entry No. 21-1 at 69-71.

Plaintiff contends that several individuals associated with First Franklin and DONI committed civil violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act,

---

[1] The $77,317.52 payoff amount encompassed $34,081.74 in principal balance, $9,628.99 in interest, and $33,606.79 in attorney fees and costs. (Docket Entry No. 21-1 at 70.)

2

18 U.S.C. § 1962 *et seq.*, regarding the loan and Property. Specifically, she alleges that the assignments of the DOT to Radian and DONI were fraudulent and that neither entity had a legal interest in the Property that permitted them to take action regarding the Note and Property. She contends that the individuals conspired and acted together as a RICO enterprise in a scheme to defraud and injure her by engaging in multiple wrongful acts, including recording the fraudulent assignments with the Davidson County Register of Deeds, attempting to interfere with Plaintiff's mortgage rights and capture the equity in the Property, extorting money from Plaintiff, preventing Plaintiff from refinancing or selling the Property at a fair price, and attempting to conduct a fraudulent foreclosure on the Property. Plaintiff contends that the multiple fraudulent and wrongful acts violated numerous state and federal statutes and constitute predicate acts under RICO.[2]

---

[2] The Court notes that the instant lawsuit is merely the most recent lawsuit filed by Plaintiff and her husband that involves the loan at issue. In 2013, Plaintiff filed a voluntary petition for bankruptcy protection that she voluntarily dismissed in 2014. *In Re Deborah L. Akers* Case No. 3:13-bk-05689 ("2013 Bankruptcy Case"). She returned to bankruptcy court in 2017 with another voluntary petition for bankruptcy protection that was dismissed in 2018 for her failure to attend the meeting of creditors. *In re Deborah L. Akers*, Case No. 3:17-bk-04635 ("2017 Bankruptcy Case"). Both petitions listed the loan at issue as a disputed debt.

During the pendency of the 2017 Bankruptcy Case, Plaintiff sued DONI and Nozick, as well as the Bankruptcy Trustee and several other defendants, in this Court on claims that the defendants were attempting to enforce fraudulent and unlawful claims in the bankruptcy proceeding. *Akers v. Edmonson, Sr., et al.*, 3:18-00212. This lawsuit was dismissed without prejudice for lack of subject matter jurisdiction in February 2018.

In 2019 and 2020, Plaintiff's husband filed two lawsuits in the state courts for Davidson County, Tennessee, in which DONI and Radian were named as defendants in one or both of the lawsuits and in which Mr. Akers unsuccessfully challenged DONI's rights to the Property and sought to stop foreclosure on the Property. *See Akers v. Dyck-O'Neal, Inc.*, WL 4471121 (Tenn.Ct.App. Sept. 30, 2021).

By Memorandum and Order entered April 21, 2021 (Docket Entry Nos. 31 and 32), the Court completed initial review of the third and operative amended complaint under 28 U.S.C. § 1915(e)(2)(B), found that Plaintiff stated sufficiently colorable civil RICO and civil RICO conspiracy claims to permit process to issue in the case against seven of the named defendants -- DONI officers and employees Bruce Nozick ("Nozick"), Jori O'Neal ("O'Neal"), Michael Foote ("Foote"), Judson Pankey ("Pankey"), Matthew Menger ("Menger"), and Susan Cowdrey ("Crowdrey") and Home Loan Services officer Sharon Maerkle ("Maerkle"). All other claims and defendants were dismissed. Defendant Cowdrey has not joined in the motions to dismiss and there is no indication from the docket that she has been served with process. A trial date is not set in the case, and a scheduling order has not yet been entered pending resolution of the motions to dismiss.

## II. MOTIONS TO DISMISS AND RESPONSE

Defendants Pankey, Menger, O'Neal, Nozick, and Foote (hereinafter "the DONI Defendants") seek dismissal of the complaint under Rules 8(a)(2), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. Attached to the motion to dismiss are copies of the recorded DOT (Docket Entry No. 47-1), the promissory note (Docket Entry No. 47-2), the recorded assignments of the DOT (Docket Entry No. 47-3 and 47-4), and the notice of the substitute trustee sale (Docket Entry Nos. 47-5), all of which are documents that the DONI Defendants assert are referred to in the TAC and are thus properly considered by the Court in determining the motion to dismiss.

The DONI Defendants contend that the allegations set out in the TAC are conclusory and lack the necessary factual specificity to state RICO claims and to satisfy the particularity requirement of Rule 9(b) for pleading claims sounding in fraud. They further argue that

4

Plaintiff's claims under RICO are barred because they were not timely filed. Finally, they argue that Tennessee law does not provide Plaintiff with standing to challenge the assignments of the DOT since she was not a party to the assignments and that, regardless of Plaintiff's lack of standing, it has been established in a prior state court proceeding that DONI is the owner and holder in due course of the promissory note and, thus, DONI was entitled to enforce its rights under the note and DOT.[3]

Plaintiff responds in opposition by contending that the Court has already resolved the issue of the adequacy of Plaintiff's allegations in its finding in the April 1, 2021, Order that Plaintiff stated colorable claims. She further raises rebuttals to the arguments for dismissal made by the DONI Defendants and requests that their motion to dismiss be stricken and that this action proceed to discovery. (Docket Entry No. 59.) Attached to Plaintiff's response are a packet of copies of various documents, e-mail, and other materials. (*Id*. at 11-61.)

Defendant Maerkle seeks dismissal of the complaint against her under Rules 4(c), 4(m), 8(a)(2), 9(b), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. Maerkle first contends that she was not properly served with process within the 90 day time period permitted by Rule 4(m) for service of process. Additionally, she argues that Plaintiff's accusations against her involve only her execution of the first assignment of the DOT and that there are no factual allegations showing that she had any type of relationship with DONI or with any events occurring after 2009, let alone factual allegations showing that she was in involved in RICO violations or a

---

[3] The DONI Defendants also argue that Plaintiff cannot pursue claims under the criminal provisions that she contends Defendants violated and that are set out as the predicate acts for her RICO claims. (Docket Entry No. 47 at 11.) However, the TAC does not set out independent claims based upon violations of these statutes, and the Court has permitted this action to process based only upon claims under RICO.

5

RICO conspiracy. Maerkle echoes the DONI Defendants' substantive arguments for dismissal of the TAC.

Plaintiff responds in opposition by disputing Defendant Maerkle's contention that she was not timely served with process. She further raises rebuttals to the arguments for dismissal made by Defendant Maerkle and requests that the motion to dismiss be denied. (Docket Entry No. 63.) Attached to Plaintiff's response are a packet of copies of various documents, e-mail, and other materials. (*Id*. at 10-19.)

### III. STANDARD OF REVIEW

Defendants' motions to dismiss are reviewed under the standard that the Court must accept all of the well pleaded allegations contained in the complaint as true, resolve all doubts in Plaintiff's favor, and construe the complaint liberally in favor of the *pro se* Plaintiff. *See Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006); *Boswell v. Mayer*, 169 F.3d 384, 387 (6t Cir. 1999); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987). Nonetheless, Plaintiff must provide factual grounds supporting her claims for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Plaintiff's factual allegations must be enough to show a plausible right to relief. *Twombly*, 550 U.S. at 555-61. The complaint must contain either direct or inferential factual allegations that are sufficient to sustain a recovery under some viable legal theory. *Id*.; *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988). To state a plausible claim for relief, the alleged facts must provide "more than a sheer possibility that a defendant has acted unlawfully." *Mik v. Federal Home Loan Mortg. Corp.*, 743 F.3d 149, 157 (6th Cir. 2014)

6

(quoting *Iqbal*, 556U.S. at 678). The well pleaded factual allegations must "do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

In review of a motion to dismiss, documents attached to a motion to dismiss may be considered if they are referred to in the complaint and are central to the claims contained therein. *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may also take judicial notice of a party's submission of public records. *See New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

## IV. ANALYSIS

The Court initially addresses two issues that touch upon the Court's preliminary review of the case pursuant to 28 U.S.C. § 1915(e)(2). First, Defendant Maerkle's argument that she was not timely served with process lacks merit. In this *in forma pauperis* case, the Court did not complete Section 1915 review of the complaint and did not direct that process issue until the Order entered April 1, 2021 (Docket Entry No. 32). Accordingly, the 90-day period provided by Federal Rule 4(m) for serving process upon Defendants was effectively tolled and did not begin to run until April 1, 2021. Thus, Defendant Maerkle, who acknowledges being properly served on June 30, 2021, *see* Docket Entry No. 56 at 4, was timely served with process.

Second, contrary to Plaintiff's contention, the Court's determination in the April 1, 2021, Order that Plaintiff states colorable claims for the purposes of initial screening does not foreclose Defendants' from arguing that Plaintiff's allegations are not sufficient to state claims for relief. In the April 1, 2021, Order, the Court explicitly stated that its determination that colorable claims

7

exist "does not preclude the defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12." *See* Docket Entry No. 32 at 1.

Turning now to the remaining arguments for dismissal of the case, the Court finds that the motions to dismiss should be granted and this case should be dismissed. The Court agrees with Defendants' argument that Plaintiff's RICO claims were not timely brought. Further, the Court finds that Plaintiff's allegations are insufficient to support RICO claims.

A four-year statute of limitations applies to civil RICO claims. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.*, 151 Fed.Appx. 433, 435 (6th Cir. 2005) (*citing Rotella v. Wood*, 528 U.S. 549, 553–55 (2000)). Plaintiff's own allegations are that the RICO violations and RICO conspiracy began in 2009 and continued through 2015, and that the DOT assignments that she contends were fraudulent occurred no later than 2015. *See* TAC at ¶¶ 12-18. Furthermore, in her 2013 bankruptcy petition, Plaintiff acknowledged DONI as a creditor with a debt secured by the Property but disputed the debt and the note holder's interest in the Property. *See* Petition (Docket Entry No. 1) in 2013 Bankruptcy Case at 8 and 13. Thus, Plaintiff knew, or through exercise of reasonable diligence should have known, of her alleged RICO injury well beyond four years prior to filing her lawsuit. *See Clair v. Bank of Am., N.A.*, 2016 WL 6092715 at *4-5 (W.D.Tenn. Oct. 19, 2016) (dismissing mortgagor's RICO claims as untimely). In her response in opposition to the motions to dismiss, Plaintiff fails to set forth any basis for a conclusion that her RICO claims have been timely brought. Although she sets out several pages of case citations in her responses in opposition, the bulk of which are directed at

8

determining whether a conspiracy exists, she offers no actual argument that rebuts the statute of limitation defense.

Notwithstanding the untimeliness of Plaintiff's complaint, her allegations fail to state actionable RICO claims. The original purpose of the RICO statute was to combat organized, continuing criminal activity. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). In addition to the criminal provisions of RICO, 18 U.S.C. § 1964(c) provides for a private right of action to "any person injured in his business or property by reason of a violation of RICO's substantive restrictions." *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 453 (2006) (internal quotation marks omitted). However, a civil RICO claim does not exist merely because a plaintiff takes the facts of an otherwise general civil claim and restates them using the language of the RICO statute. Although the substantive provisions set out in 18 U.S.C. § 1962 (a), (b), (c), and (d) each make different activities unlawful under RICO, a necessary element for a claim under each provision is proof of a pattern of racketeering activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989). Plaintiff's allegations simply fail to set out facts that show the existence of a pattern of racketeering activity involving Defendants.[4]

RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). Crimes comprising "racketeering activity" are listed under 18 U.S.C. § 1961(1) and are commonly referred to as

---

[4] A plaintiff proceeding under Section 1962 may show the "collection of an unlawful debt" in lieu of a showing of a pattern of racketeering activity. *H.J. Inc.*, 492 U.S. at 232. However, Plaintiff has not proceeded under this avenue, nor do the facts of this case support such a showing. Under RICO, "unlawful debt" pertains to illegal gambling debt or debt unenforceable because of usury laws. 18 U.S.C. § 1961(6); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 229 n.1 (6th Cir. 1997).

"predicate acts." Although Plaintiff sets out numerous examples of what she contends are listed unlawful, and thus predicate, acts committed by Defendants, a RICO plaintiff must do more than merely recite a list of predicate acts because "there is something to a RICO pattern beyond the number of predicate acts involved." *H.J. Inc.*, 492 U.S. at 238. A plaintiff must show that "the predicate acts are related and that they constitute or pose a threat of continued criminal activity." *Id*. at 239. It is this notion of "continuity plus relationship" that combines to produce a "pattern" under RICO. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006).

The instant case involves only Plaintiff and her dispute with Defendants over the assertion of rights under the loan at issue and the assigned DOT. The predicate acts alleged by Plaintiff, even if taken as true, were all directed at Plaintiff and her husband, with the single alleged objective of defrauding them with respect to Plaintiff's loan and the Property. A pattern of racketeering activity does not exist in such a situation because "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Moon*, 465 F.3d at 725-26. *See also Bachi-Reffitt v. Reffitt*, 802 Fed.App'x 913, 918 (6th Cir. 2020) ("[Plaintiff's] complaint does not allege an actionable "pattern of racketeering activity" because it pleads only a single scheme targeting a single victim"); *Southampton Associates, L.P. v. K. Jess, Inc.*, 46 F.3d 1131, 1995 WL 25431 (6th Cir. 1995) (collecting cases); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) ("We cannot conclude that [defendant's] alleged actions here, involving a single victim and a single scheme for a single purpose over seventeen months, constitute the type of 'long-term criminal conduct' Congress sought to prohibit with RICO"); *Logan v. Ledford*, 699 F.Supp. 141, 147 (M.D.Tenn.

10

1988) ("This Court finds that plaintiff cannot establish the requisite 'pattern of racketeering activity' because defendants' alleged predicate acts were part of a single finite scheme.").

Indeed, courts have regularly dismissed as insufficient the RICO claims brought by defaulting mortgagors against the holder of the mortgage. *See Lindberg v. Bank of Am., N.A.,* 2015 WL 6738690 at *4 (W.D. Mich. Nov. 4, 2015) ("If Plaintiffs' allegations were enough to state a RICO pattern, every individual challenge to a foreclosure could be re-cast as a RICO claim, and this is not what the RICO statute covers."); *Geter v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 589414 at *4 (E.D.Mich. Feb. 10, 2011) ("Plaintiff has failed to allege any facts to support a RICO claim. At best, plaintiff alleges that the recording of false documents with the Wayne County register of deeds deprived him of his interest in the property."); *Pavuk v. U.S. Bank Nat. Ass'n ND*, 2010 WL 3057407, at *4 (S.D.Ohio Aug. 2, 2010) (mailings between the defendant and the plaintiff related only to the plaintiff's own residential mortgage did not evidence a pattern of racketeering activity); *Dimov v. EMC Mortgage Corp.*, 2010 WL 2506717, *8 (E.D.Tenn. June 17, 2010) (multiple alleged predicate acts of mail fraud and extortion were keyed to the single objective of depriving the plaintiff of his real property and were not sufficient to show a pattern of racketeering activity). Given the dismissal of Plaintiff's underlying RICO claim, her RICO conspiracy claim under Section 1962(d) also warrants dismissal. *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990); *Logan*, 699 F.Supp. at 147.

In the end, Plaintiff's complaint presents facts of what is essentially a non-remarkable mortgage loan dispute brought by a debtor who was confronted with efforts to collect the loan and with the prospect of a foreclosure sale after discontinuing payments on the loan. Plaintiff's

11

attempt to turn these facts into claims under the RICO statute is simply unavailing even though she couches the factual allegations in her complaint with the language of the RICO statute.

## RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that the motion to dismiss of Defendants Judson L. Pankey, Matthew K. Menger, Jori L. O'Neal, Bruce S. Nozick, and Michael D. Foote (Docket Entry No. 46) and the motion to dismiss of Defendant Sharon Maerkle (Docket Entry No. 55) be GRANTED and that this case be DISMISSED as to all defendants and claims.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

                                            Respectfully submitted,

                                            BARBARA D. HOLMES
                                            United States Magistrate Judge