IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH L. AKERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-01107 |
| ) | Judge Aleta A. Trauger |
| SHARON D. MAERKLE *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

The magistrate judge has issued a Report and Recommendation ("R&R") (Doc. No. 67), recommending that both the Motion to Dismiss (Doc. No. 46) filed by defendants Judson L. Pankey, Matthew K. Menger, Jori L. O'Neal, Bruce S. Nozick, and Michael D. Foote (the "Dyck-O'Neal Defendants") and the Motion to Dismiss (Doc. No. 55) filed by defendant Sharon D. Maerkle be granted and that this case be dismissed. Now before the court are *pro se* plaintiff Deborah L. Akers' "Response & Objection(s)" [sic] (hereinafter "Objections") (Doc. No. 68) to the R&R. Also pending is defendant Maerkle's Motion to Clarify Scrivener's Error (Doc. No. 64), filed with a proposed Amended Memorandum in Support (Doc. No. 64-1).

For the reasons set forth herein, the court will deny Maerkle's Motion to Clarify, overrule the plaintiff's Objections, grant both Motions to Dismiss, and direct the Clerk to enter judgment for all remaining defendants.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, proceeding *pro se*, filed her initial Complaint and Request for Injunction on December 28, 2020 and her first Amended Complaint and Request for Injunction on December 31, 2020. (Doc. Nos. 1, 4.) The court construed the first Amended Complaint as seeking a

temporary restraining order ("TRO") barring a scheduled foreclosure sale of the residence. On January 6, 2021, the court entered an Order denying without prejudice the request for a TRO and indicating that the court would, "in due course," undertake an initial review of the complaint. (Doc. No. 5, at 4.)

With the court's permission, the plaintiff thereafter filed a Second Amended Complaint and Request for Injunction (Doc. No. 21) and then a Third Amended Complaint and Request for Injunction (Doc. No. 27). The Third Amended Complaint ("TAC")[1] is the operative pleading. In it, the plaintiff brings suit against nine out-of-state individuals based on allegations of wrongdoing in connection with the transfer of interests in a second mortgage on the plaintiff's residence at 543 Richmar Drive, Nashville, Tennessee (the "Property"). The plaintiff seeks damages of not less than $250,000, as well as injunctive relief.

As set forth in the TAC, the plaintiff executed a Promissory Note ("Note") in 2003 to obtain a loan ("Second Mortgage") in the amount of $37,200 from First Franklin Financial Corporation ("First Franklin"). She pledged the Property as security for the loan through a Deed of Trust ("DOT") signed by both herself and her husband, James Akers. (TAC ¶ 8; *see also* Note, Doc. No. 47-2; DOT, Doc. No. 47-1.) The DOT provides that all rights thereunder "shall inure to" the "successors and assigns of Lender and Borrower," and it otherwise contains no restrictions on First Franklin's ability, as lender, to assign its rights under the DOT. (Doc. No. 47-1, at 4.) In addition, by signing the DOT, the plaintiff agreed that, in the event she breached her obligations under the DOT, she would be able to discontinue proceedings to enforce the DOT only upon paying all sums due under the DOT and Note, curing any other breaches of the DOT, and paying all reasonable

---

[1] The TAC, which incorporated only minor or ministerial changes, still bears the title "Second Amended Complaint." (Doc. No. 27, at 1.)

expenses incurred by the "Lender and Trustee"—or their assignees—in enforcing the plaintiff's obligations under the DOT, "including, but not limited to, reasonable attorneys' fees." (*Id.*)

The plaintiff made every payment due on the Second Mortgage in a timely fashion up until November 2008. (TAC ¶ 9.) She alleges that, at that time, she and her husband were "forced to suspend further payments due to directives from then 'servicer,' Home Loan Services, Inc., of Pittsburg, Pennsylvania, that they could no longer accept any payments." (*Id.*) In a footnote, the plaintiff explains only that the suspension of payments was "the direct and proximate result of the so-called 'Mortgage Crisis' which began in late 2007 and continued through approximately 2012" and that Home Loan Services, Inc. "was fully aware that 'servicing' for the subject Second Mortgage had already been transferred to Saxon Mortgage Services, Inc. of Dallas, Texas." (TAC ¶ 9 n.2.) The plaintiff alleges that "Dyck" purports to have become the lawful holder of the Note on or about March 4, 2009. The plaintiff does not state when she became aware of that fact or whether she was ever directed to submit payments on the Second Mortgage to any other loan servicer. She also does not allege that she made any further payments on the Second Mortgage after November 2008.[2]

Instead, she alleges that defendant Maerkle, in concert with defendant Nozick, fraudulently executed a Corporate Assignment of Deed of Trust, pursuant to which the DOT was fraudulently assigned to Radian Services, LLC on "March 4, 13, 2009." (Doc. No. 21-1, at 48–49; *see also* TAC ¶¶ 11–13.) The document is signed by "Sharon D. Maerkle, Vice President" on behalf of First Franklin. (Doc. No. 21-1, at 49.) The copy of the Assignment in the record reflects that it was recorded by the Davidson County Register of Deeds on May 18, 2015. (*Id.* at 48.) The plaintiff

---

[2] The Amortization Schedule the plaintiff filed with the Second Amended Complaint, which was incorporated by reference in the TAC, reflects that the scheduled maturity date of the Second Mortgage was March 2018. (*See* Doc. No. 21-1, at 39.)

alleges that this assignment was fraudulent, because Maerkle was never employed by First Franklin, as its Vice President or otherwise, and did not have authority to execute an assignment on behalf of First Franklin. (TAC ¶¶ 7, 12–13.)

A second Assignment of Mortgage or Deed of Trust or Security Deed was apparently executed on August 1, 2013. In this second Assignment, Radian purports to assign the original DOT to Dyck O'Neal, Inc. ("Dyck-O'Neal"). It is signed by Michael D. Foote as Vice President of Dyck-O'Neal, acting as Radian's "attorney in fact." (Doc. No. 21-1, at 52–53; *see also* TAC ¶ 17.) Although the plaintiff alleges that Susan Cowdrey, acting in concert with Michael Foote, caused the document to be registered with the Office of the Register of Deeds in Davidson County, Tennessee (TAC ¶ 17(i)), the document she filed as an exhibit and to which she refers in the TAC does not reflect that it was ever recorded by the Davidson County Register of Deeds.

However, a third Assignment of Deed of Trust, dated May 8, 2015, was recorded by the Davidson County Register of Deeds, like the first Assignment, on May 18, 2015. (Doc. No. 21-1, at 54; TAC ¶ 18(i).) This third Assignment again reflects that Radian, as assignor, assigned to Dyck-O'Neal, as assignee, the plaintiff's original DOT securing the Second Mortgage on the Property. (Doc. No. 21-1, at 54) It is signed by Bruce Nozick as President of Dyck-O'Neal and as attorney in fact for Radian. (*Id.* at 55.)

The plaintiff asserts that individual employees of Dyck-O'Neal, "between the dates of May 18, 2009, and February 2, 2011," "continued their persistent efforts to extort" more than $40,000 from the plaintiff and her husband (TAC ¶ 14(iii)), apparently by seeking to enforce the allegedly fraudulent assignment against her. While it does not contain a precise chronology or explanation of events, the TAC refers to "settlement negotiations" between the plaintiff and Dyck-O'Neal related to the Second Mortgage beginning at least as early as 2011, at which time a Dyck-O'Neal

representative told the plaintiff and her husband that Dyck-O'Neal's intention was to leave them no equity in their house. (TAC ¶ 15.) These efforts at extortion continued through 2015, with additional settlement negotiations, at which time the plaintiff apparently learned that, because of the fraudulent assignment by Maerkle, she and her husband were barred from selling or conveying their residence, refinancing, or buying a new residence. (TAC ¶¶ 15, 16; *see also* Second Am. Compl., Doc. No. 4, at 7.) The conspiracy culminated in the scheduling of a foreclosure sale for December 3, 2020, which was postponed to January 7, 2021. (TAC ¶¶ 20, 20(i).) As alleged in the TAC, the plaintiff and her husband ultimately paid $77,114.64, the full amount demanded by the attorneys for Dyck-O'Neal, which included a principal balance of $34,081.74, interest in the amount of $9,626.11, and attorney's fees and costs of $33,406.79, to pay off the Note, release the DOT, and prevent the foreclosure sale. (TAC ¶ 20(iv); Doc. No. 21-1, at 66–71.)

Based on these allegations, the TAC asserts that the defendants violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 *et seq.*, by engaging in a conspiracy to effect the fraudulent assignment of the DOT, first to Radian and then to Dyck-O'Neal, with the intent to capture the equity in the Property, interfere with the plaintiff's mortgage rights, prevent her from refinancing or selling the Property at a fair price, and conduct a fraudulent foreclosure sale of the Property. She contends that the multiple fraudulent and wrongful acts also violated numerous other state and federal criminal and civil statutes and constitute predicate acts under RICO. The plaintiff demands damages in the amount of "no less than" $250,000, or triple her actual damages, and injunctive relief enjoining all defendants from "ever again asserting a claim of any nature" against the Property. (TAC, Doc. No. 27, at 12.)

The court conducted an initial review of the TAC pursuant to 28 U.S.C. § 1915(e). In a Memorandum and separate Order entered on April 1, 2021, the court granted the plaintiff leave to

proceed *in forma pauperis* and also concluded, preliminarily, that the TAC stated colorable civil RICO and RICO conspiracy claims against seven of the named defendants, including the five Dyck-O'Neal Defendants and Maerkle, as well as defendant Susan I. Cowdrey. The court allowed these claims to proceed but dismissed all other claims against all other defendants. (Doc. Nos. 31, 32.) In the same Order dismissing some claims and directing service of process upon the remaining defendants, the court referred the case to the Magistrate Judge to, among other things, "dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B)." (Doc. No. 32, at 2.)

## II. THE PENDING MOTIONS

The Dyck-O'Neal Defendants filed their Motion to Dismiss along with copies of the recorded original DOT (Doc. No. 47-1), Note (Doc. No. 47-2), recorded Assignment to Radian (Doc. No. 47-3), recorded assignment by Radian to Dyck-O'Neal (Doc. No. 47-4), and Notice of Substitute Trustee's Sale (Doc. No. 47-5). In support of their Motion to Dismiss, the Dyck-O'Neal Defendants argue that (1) the allegations in the TAC lack the particularity required by Rule 9 of the Federal Rules of Civil Procedure to state a RICO claim or RICO conspiracy claim premised upon fraud; (2) the RICO claims are barred by the four-year statute of limitations; (3) the plaintiff lacks standing under Tennessee law to challenge the assignments of the DOT, because she was not a party to the assignments, and it has been established in prior state-court proceedings that Dyck-O'Neal is the owner and holder in due course of the Note and DOT and, as such, entitled to enforce its rights under those documents.

In response, the plaintiff asserts that the undersigned already determined in the initial review that the TAC stated colorable claims under RICO, that the defendants' lack of any interest in the Property did not prevent them from extorting more than $77,000 from her and her husband, and that her claims are not barred by the statute of limitations. In support of this latter assertion,

the plaintiff provides numerous completely irrelevant legal citations and argument pertaining to whether a single conspiracy or multiple conspiracies exist and how to ascertain whether a conspirator has withdrawn from the conspiracy. (Doc. No. 59, at 6–8.) She also asserts, however, that "[c]onspiracy is a crime which begins with a scheme and may continue on until its objective is achieved or abandoned." (*Id.* at 7.) She insists that she has standing to contest the assignments because they are fraudulent and that the claim that Dyck-O'Neal has been declared in a state court proceeding to be the holder of the Note in due course is entirely spurious, since the cited trial court decision is on appeal.[3]

Maerkle's Motion to Dismiss argues that the claims against Maerkle must be dismissed because the TAC: (1) fails for insufficient service of process; (2) was not served within ninety (90) days of being filed; (3) fails to plausibly plead facts to support a RICO violation; (4) fails to comply with Fed. R. Civ. P. 8(a) and 9(b); (5) fails to state a claim upon which relief can be granted; (6) is barred by the four-year statute of limitations that applies to RICO violations based on allegations of fraud; and (7) is improper due to the plaintiff's lack of standing. (Doc. No. 56, at 3–4.) Maerkle also specifically argues that the TAC "addresses [her] in her personal capacity and fails to acknowledge her role as Vice-President of [First Franklin]," for which she was acting as an agent at the time of the relevant assignment. (*Id.* at 3.)

In her Response, the plaintiff identifies Maerkle as the "single-most 'pivotal' figure" in the alleged conspiracy. (Doc. No. 63, at 2, n.2.) The plaintiff maintains, among other things, that it is "preposterous" for Maerkle to claim to have been a Vice President of First Franklin at the time of

---

[3] Attached to the plaintiff's Response are numerous documents pertaining to state court proceedings relating to the same loan, as well as communications between the parties. Since it is not clear that these documents were referenced in the TAC or incorporated by reference, the court has not considered these documents.

the assignment of the DOT from First Franklin to Radian in 2009, since Maerkle "admits" that the assets of First Franklin had been acquired by Merrill Lynch in 2006 and then by Bank of America in 2008. (*Id.* at 2 n.1) The plaintiff also claims that the fact that Maerkle resided near Pittsburgh, Pennsylvania, while First Franklin was headquartered in Charlotte, North Carolina, also calls into question her claim to have been Vice President of First Franklin. (*Id.*) The plaintiff insists that it is absolutely critical to obtain from Maerkle sworn testimony regarding "how, when, where, by what means, and from whom did she obtain lawful authority to effectuate the alleged" assignment of the DOT from First Franklin to Radian; "how, when, where, by what means, and from whom she was ever lawfully designated 'Vice President'" of First Franklin; what other communications she had regarding that action; and "how much, by whom, and in what manner she was paid to falsify" the assignment. (Doc. No. 63, at 7.)

More substantively, the plaintiff reiterates the arguments made in response to the Dyck-O'Neal Defendants' Motion to Dismiss and further argues that the record shows that Maerkle was properly served.

Shortly after the plaintiff responded to Maerkle's motion, Maerkle filed a Motion to Clarify Scrivener's Error. (Doc. No. 64.) In this motion, Maerkle explains that, although she is identified as Vice President of First Franklin in the first Assignment of the DOT and stated in her Motion to Dismiss that she was acting at all times in her capacity as Vice President of First Franklin, she was in fact, Vice President of Home Loan Services, Inc., the company that was, at the time, a loan servicer for First Franklin and thus had "certain authorities granted to it because of that relationship." (Doc. No.64, at 1.) She also asserts that, while employed by Home Loan Services, she had the "necessary authority to execute documents related to [Home Loan Services'] servicing of various loans, including the Assignment." (*Id.* at 1–2.) She seeks to substitute an Amended

Memorandum in support of her Motion to Dismiss to correct the "error." (*Id.* at 2.) The proposed Amended Memorandum is attached as an exhibit to the Motion to Clarify. (Doc. No. 64-1.) Maerkle's motion is not accompanied by an affidavit or declaration.

### III. THE R&R

The R&R summarizes the facts set forth in the TAC and the documents filed by the parties, including the DOT and the assignments. It accepts as a factual matter that the DOT was assigned by First Franklin to Radian and by Radian to Dyck-O'Neal, as reflected in the copies of the recorded assignments submitted by both the plaintiff with her pleading and by the Dyck-O'Neal Defendants. (Doc. No. 67, at 2.) The R&R characterizes the legal claims, in part, as based on allegations that "individuals associated with First Franklin and [Dyck-O'Neal]" engaged in a conspiracy in violation of RICO. (*Id.*)

The R&R concludes as a matter of law that the initial review does not insulate the plaintiff's claims from being dismissed pursuant to properly filed motions to dismiss. It rejects Maerkle's argument that she was not properly and timely served with process. It further finds, however, that the RICO claims are barred by the applicable four-year statute of limitations and, alternatively, that the TAC fails to allege facts that establish the existence of a pattern of racketeering activity, as required to state a claim for violation of RICO. For both of these reasons, the Magistrate Judge recommends that the TAC be dismissed in its entirety. (Doc. No. 67, at 10–11.)

The plaintiff thereafter filed her timely Objections to the R&R. (Doc. No. 68.)

### IV. REVIEW STANDARDS

#### A. Objections to a Report and Recommendation

Within fourteen days after being served with a report and recommendation, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2) (emphasis added). The district court must review *de*

*novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

    **B.**    **Rule 12(b)(6) Motion to Dismiss**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider, not only the Complaint and exhibits attached to it, but also exhibits attached to defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

V.   DISCUSSION

    A.   **Maerkle's Motion to Clarify**

The defendants' motions are characterized as motions to dismiss under Rule 12(b)(6). In ruling on these motions, as suggested above, the court may consider the TAC, the exhibits attached to it and those submitted by the Dyck-O'Neal Defendants, insofar as the exhibits the defendants submitted were referred to in the TAC and are central to the plaintiff's claims. This includes the original Note and original DOT, as well as complete copies of the assignments, the validity of which the plaintiff challenges.

It does not, however, include new allegations made by Maerkle in her Motion to Clarify. The assertions therein and Maerkle's attempt to clarify her role in the process are not supported with reference to a declaration or any other proof. Even if they were, the court could not consider such proof without converting her motion into one for summary judgment, which the court will not do. Moreover, the clarification is simply not necessary or relevant to the consideration of the Motions to Dismiss. The court, therefore, declines to take it into consideration. Maerkle's Motion to Clarify will be denied, and her request to file an amended Memorandum will, likewise, be

denied. The court accepts the truth of the plaintiff's allegation in the TAC that Maerkle, when she executed the First Assignment of the DOT, purportedly in her capacity as Vice President of First Franklin, was not actually an employee or officer of First Franklin and was, instead, employed as Vice President of Home Loan Services. (*See* Doc. No. 27 ¶ 7.)

### B. Objections to the R&R

#### 1. *Objection to the Referral of the Motions to Dismiss*

The plaintiff, first, makes an overarching objection to the Magistrate Judge's consideration of the Motions to Dismiss. She contends that the Magistrate Judge "clearly erred" in considering the motions, because 28 U.S.C. § 636(b)(1)(A) does not authorize magistrate judges to hear motions to dismiss. (Doc. No. 68, at 2.) The court overrules this objection, as the plaintiff simply misconstrues the statutory authority underlying the referral.

Under 28 U.S.C. § 636(b)(1)(A), a district judge may designate a magistrate judge to hear and definitively "determine" any pretrial matter, except for dispositive motions (which include motions to dismiss for failure to state a claim for which relief may be granted). Under a different subsection of the same statutory provision, a district judge may designate a magistrate judge to submit "proposed findings of fact and recommendations for the disposition" of a motion to dismiss—that is, to submit a report and recommendation that sets forth proposed findings of fact and conclusions of law and recommends to the district judge a disposition of the pending motion. 28 U.S.C. § 636(b)(1)(B). In filing such a report and recommendation, *id.* § 636(b)(1)(C), the magistrate judge does not actually "determine" or rule on the pending motion. Instead, after a report and recommendation is filed, any party may serve objections, as the plaintiff did, to the proposed findings and recommendations. As already explained in Part IV.A., above, the district court then "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and either "accept[s], reject[s], or

modif[ies], in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* § 636(b)(1).

That is precisely the procedure being employed here, and the plaintiff's objection to the magistrate judge's initial consideration of the Motions to Dismiss is overruled.

### 2. The Statute of Limitations

In addition to numerous trivial objections, the plaintiff objects substantively to the Magistrate Judge's legal conclusions that the plaintiff's RICO claims are barred by the statute of limitations and, alternatively, that the TAC fails to state a claim under RICO. Considering the issue *de novo*, the court finds that the plaintiff's claims are time-barred and will grant the Motions to Dismiss on that basis, without reaching the plaintiff's other objections or the defendants' other arguments.

As an initial matter, the court notes that "[t]he statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing Fed. R. Civ. P. 8(a)). As a result, a motion to dismiss is "generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations." *Id.* At the same time, however, the Sixth Circuit has also recognized that, when "it is apparent from the face of the complaint that the time limit for bringing the claim[s] has passed," the plaintiff incurs an "obligation to plead facts in avoidance of the statute of limitations." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (citation omitted). In this case, it clearly appears from the face of the TAC that the plaintiff's claims accrued outside the limitations period.

Under 18 U.S.C. § 1962(c), "[i]t shall be unlawful for any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1964(c)

of RICO authorizes civil suits, stating that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." 18 U.S.C. 1964(c). A civil RICO claim is subject to the four-year statute of limitations incorporated in the Clayton Act, 15 U.S.C. § 15b. *See Agency Holding Corp v. Malley-Duff & Assocs.*, 483 U.S. 143, 152, 156 (1987). In *Rotella v. Wood*, 528 U.S. 549 (2000), the Supreme Court held that RICO claims accrue, and the statute of limitations begins to run, "when a plaintiff knew or should have known of his injury" arising from the RICO violation. *Id.* at 553, 554.

In this case, the plaintiff alleges that the defendants began engaging in a fraudulent conspiracy involving the falsification of assignments in 2009 and continued through mid-2015, the goal of which was to falsely claim an interest in the Second Mortgage on her Property. Although the plaintiff does not precisely allege when she became aware of the fraudulent assignments or the conspiracy, the original and first amended complaints in this action alleged that the foreclosure action initiated in 2020 was the "fifth time now since May 18, 2009 [that] those named Defendants are attempting to extort funds . . . from Akers" by scheduling such a foreclosure action. (*See, e.g.*, Doc. No. 4, at 7.) The same pleadings allege that the plaintiff first incurred injury to her Property resulting from the defendants' conspiracy many years ago, insofar as the defendants' actions prevented the plaintiff and her husband from restructuring their debts in the form of a reverse mortgage, refinancing their primary mortgage on the Property at a lower interest rate, selling the Property at fair market value, or buying a new residence in the Springfield, Missouri area, as she and her husband desired to do. (*See id.*)

The TAC likewise makes it clear that the alleged injuries were incurred at least as early as 2011 and no later than April or May 2015. Specifically, the TAC alleges that the plaintiff and her

husband were told by an agent of Dyck-O'Neal during foreclosure settlement negotiations in February 2011 that Dyck-O'Neal's intention was to leave the plaintiff and her husband with no equity in their house. (TAC ¶ 15.) Settlement negotiations "resumed" in April or May 2015, at which time the plaintiff and her husband intended—but, because of the conspiracy resulting in the fraudulent assignments, were unable—to sell their residence and move to Springfield, Missouri. (TAC ¶ 16.)

As alleged in the TAC, the defendants' efforts to foreclose continued, with the most recent effort taking place in late 2020. This last effort ultimately resulted in a settlement in early 2021, with the plaintiff and her husband paying off all amounts allegedly owed under the mortgage, plus attorney's fees. As set forth above, however, the fact that the plaintiff continued to incur injury from additional "predicate act[s] forming part of the same" alleged conspiracy does not mean that the statute of limitations began to "run anew" in 2020. *Rotella*, 528 U.S. at 554. Rather, the limitations period began to run from the first alleged injury incurred as a result of the conspiracy, which took place, at the latest, in April or May 2015, more than four years before the plaintiff filed this lawsuit in December 2019.

As a result, the court finds that the plaintiff's RICO claims—the only remaining claims in this case—are barred by the statute of limitations.

## VI. CONCLUSION

For the reasons set forth herein, defendant Maerkle's Motion to Clarify Scrivener's Error (Doc. No. 64) will be denied. Further, however, the court will overrule the plaintiff's Objections, accept in part the R&R,[4] and grant the defendants' Motions to Dismiss on the grounds that the

---

[4] Because the statute of limitations argument is dispositive, the court has no need to address the plaintiff's other objections. The court, therefore, does not reach the question of whether the TAC fails to allege an actionable RICO claim and does not adopt that portion of the R&R.

plaintiff's RICO claims are barred by the statute of limitations.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge